UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| SHEET METAL WORKERS PENSION TRUST OF NORTHERN CALIFORNIA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> TRAYER ENGINEERING CORPORATION, <br><br> Defendant. | Case No.15-cv-04234-LB <br><br> **ORDER GRANTING MOTION TO DISMISS** <br><br> [Re: ECF No. 18] |

## INTRODUCTION

This is a lawsuit under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461. The plaintiffs (whom the court calls the "Trust Funds") are multiemployer employee-benefit plans; they have sued defendant Trayer Engineering Corporation for contributions that Trayer owed as an employer, but allegedly did not pay, to the plans. Trayer has counterclaimed for the refund of contributions that it allegedly paid by mistake. The plaintiffs now move under Rule 12(b)(6) to dismiss Counterclaim 2, for common-law restitution, and Counterclaim 3, which has morphed from a claim for civil penalties under 29 U.S.C. § 1132(c)(1)(B) into a request for the attorney's fees and costs (of bringing this particular counterclaim) as "equitable relief" under 29 U.S.C. § 1132(a)(11)(B). This motion can be decided without oral argument. *See* Civil L.R. 7-1(b). The court grants the plaintiffs' motion. The

ORDER (No. 15-cv-04234-LB)

restitution counterclaim is dismissed with prejudice. The request for attorney's fees and costs is dismissed with leave to amend.[1]

## STATEMENT

Because this is a Rule 12(b)(6) motion, the court accepts the defendant's counterclaim allegations as true and draws from them all reasonable inferences in the defendant's favor. *See, e.g., Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555-56 (2007); *Moss v. United States Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009); *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 338-39 (9th Cir. 1996).

The defendant's counterclaims revolve factually around two things: 1) its allegedly excessive contributions to the benefit plans; and 2) documents that it requested from the Trust Funds. First, the contributions. Trayer entered into a collective-bargaining agreement with Sheet Metal Workers' International Association effective July 1, 2010.[2] The bargaining agreement required Trayer to contribute to the Trust Funds for each hour worked by covered employees.[3] From July 2010 through April 2012, Trayer made contributions based on hours paid rather than hours worked.[4] This mistake resulted in Trayer paying more than $90,000 in excess contributions.[5] The Trust Funds had a third party conduct "payroll audits" in 2011 and 2013 and, through these audits, knew or should have known that Trayer had mistakenly contributed based on hours paid.[6] Neither the auditor nor the Trust Funds informed Trayer of the mistake.[7] The governing trust agreement allows the Trust Funds to return erroneous contributions.[8] In February 2015, Trayer asked the

---

[1] This case is related to *Sheet Metal Workers of N. Cal. Pension Trust Fund et al v. Trayer Eng'g Corp.*, No. 16-cv-00872-LB (N.D. Cal.), which involves Trayer's alleged "withdrawal liability" under ERISA.

[2] Counterclaim – ECF No. 9 at 7 (¶ 9). Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[3] *Id.* (¶ 10).

[4] *Id.* (¶ 11).

[5] *Id.* at 9 (¶ 23).

[6] *Id.* at 7-8 (¶¶ 12-14).

[7] *Id.* at 7 (¶¶ 12-13).

Trust Funds to return the overpaid contributions.[9] The Trust Funds did not refund the contributions.[10]

Second, the document request. In late June 2015, invoking 29 U.S.C. § 1021(k), Trayer requested certain documents from the Sheet Metal Workers Pension Plan of Northern California.[11] The plan "did not respond" to Trayer's request and did not provide the requested documents.[12] According to the defendant's Rule 12(b)(6) brief, one week after Trayer filed its counterclaim, the Trust Funds gave Trayer the requested material.[13]

Trayer brings three counterclaims. Counterclaim 1 seeks a refund of the overpaid contributions under § 403(c)(2)(A) of ERISA, 29 U.S.C. § 1103(c)(2)(A).[14] Counterclaim 2 seeks the same refund by way of a common-law claim for restitution.[15] Counterclaim 3, as pleaded, seeks civil penalties of $110 per day for each day that the Trust Funds failed to furnish the requested documents.[16] Trayer now seems to accept that the statute under which it sought those penalties, 29 U.S.C. § 1132(c)(1)(B), does not permit employers to bring such a claim.[17] Furthermore, after Trayer filed its counterclaim, the Trust Funds gave Trayer the requested documents.[18] In its Rule 12(b)(6) opposition, Trayer has accordingly shifted ground. It now seeks attorney's fees and costs for having to bring Counterclaim 3; it seeks this as "equitable relief" under 29 U.S.C. § 1132(a)(11)(B).[19] The plaintiffs' Rule 12(b)(6) motion seeks to dismiss Counterclaims 2 and 3.

---

[8] *Id.* (¶¶ 16-17).

[9] *Id.* (¶ 18.)

[10] *Id.* at 9 (¶¶ 27-28).

[11] *Id.* at 8 (¶ 19).

[12] *Id.* at 8, 10 (¶¶ 20, 34).

[13] ECF No. 32 at 7 n. 3.

[14] Counterclaim – ECF No. 9 at 8-9 (¶¶ 21-28).

[15] *Id.* at 9-10 (¶¶ 29-32).

[16] *Id.* at 10 (¶¶ 33-35).

[17] ECF No. 32 at 7 n. 2 ("Trayer acknowledges that the specific statute authorizing relief [related to the document request] was misstated in Trayer's complaint.").

[18] *See id.* at 7 n. 3.

[19] *Id.* at 7.

**ANALYSIS**

**1. Rule 12(b)(6) Standard**

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal under Rule 12(b)(6) may be based either on the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1988); *accord, e.g., Estrada v. Cal. Dep't of Corr.,* 2014 WL 3751941, *1 (C.D. Cal. July 28, 2014). When evaluating a Rule 12(b)(6) motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the non-moving party. *See, e.g., Twombly,* 550 U.S. at 555-56; *Cahill,* 80 F.3d at 339. This includes drawing "all reasonable inferences" from the complaint's allegations. *Navarro*, 250 F.3d at 732 (citing *Cahill*, 80 F.3d at 338). "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.,* 83 F.3d 1136, 1140 (9th Cir. 1996). If a court dismisses a complaint, it should give leave to amend unless the "pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

**2. Counterclaim 2 — Common-Law Restitution**

Section 403(c)(2)(A) of ERISA permits multiemployer plans to return employer contributions that are made due to a mistake of fact or law. The Ninth Circuit has held that § 403 gives an employer an implied right of action to recoup mistaken contributions. *Award Serv., Inc. v. N. Cal. Retail Clerks Unions & Food Emp'rs Joint Pension Trust Fund*, 763 F.2d 1066, 1068 (9th Cir. 1985); *British Motor Car Distribs., Ltd. v. San Francisco Auto. Indus. Welfare Fund*, 882 F.2d 371, 374 (9th Cir. 1989). "The right to a refund is not automatic, however, even if the employer can demonstrate the requisite mistake of fact or law; the employer must also show that the equities favor restitution." *Alaska Trowel Trades Pension Fund v. Lopshire*, 103 F.3d 881, 885 (9th Cir. 1996).

The parties dispute whether, in addition to the statutory refund claim that *Award Service* recognized under ERISA § 403, the defendant can also maintain a common-law claim for restitution of the overpayments. It cannot. The Ninth Circuit does not recognize such a claim. Counterclaim 2 thus must be dismissed as a matter of law. *See British Motor Car*, 882 F.2d at 377; *Irirgaray Dairy v. Dairy Employees Local No. 17 Christian Labor Ass'n of the United States of Am. Pension Trust*, 2015 WL 9319448, *23-25 (E.D. Cal. Dec. 23, 2015), *appeal docketed*, No. 16-15107 (9th Cir. Jan. 25, 2016) (dismissing common-law restitution claim).

*British Motor Car* is conclusive on this point. The Ninth Circuit there held that an employer had no claim for common-law restitution to parallel its § 403 refund claim; the appeals court strongly indicated that this circuit recognizes no such common-law restitution claim. *British Motor Car*, 882 F.2d at 377. Because *British Motor Car* so directly addresses the parties' arguments, and so clearly requires dismissing the defendant's restitution claim, the court quotes from it at unusual length. After holding that the defendant employer had not shown a "mistake of fact" to support a refund claim under § 403, *British Motor Car*, 882 F.2d at 375-77, the Ninth Circuit turned to the question of common-law restitution:

> The Employers contend that even if relief is not available under section 403(c)(2)(A)(ii), they are entitled to a refund under the federal common law of restitution. They cite several cases from other circuits for the theory that Congress, in enacting ERISA, authorized the evolution of a federal common law of pension plans and such authorization gives courts the power to order restitution in favor of employers to prevent unjust enrichment.
>
> **The Employers' contention is meritless**. They cite two circuit cases which they contend stand for the proposition that there is a federal common law cause of action for restitution for mistaken contributions by employers distinct from an action pursuant to section 403(c)(2)(A)(ii). *Whitworth Bros. Storage Co. v. Cent. States,* 794 F.2d 221, 236 (6th Cir.), *cert. denied,* 479 U.S. 1007 (1986); *Airco Indus. Gases v. Teamsters Health & Welfare,* 618 F. Supp. 943, 950 (D. Del. 1985). In both cases, however, the court first held that an employer had no implied right of action under section 403(c)(2)(A)(ii) and only then held that an employer had a right of action under federal common law.
>
> . . . .
>
> **[T]his court has not recognized any such federal common law action for restitution in favor of employers**. And there would appear to be **no basis for such an action** particularly where this court does allow employers to bring suit under ERISA for restitution of mistaken contributions.

ORDER (No. 15-cv-04234-LB)   5

*British Motor Car*, 882 F.2d at 377 (parallel citations omitted) (emphases added). The *British Motor Car* court's statement that there appears to be "no basis for such an action" suggests that the common-law restitution claim is not cognizable in this circuit — and so must be dismissed.

Following *British Motor Car*, our sister court in the Eastern District of California recently held that an employer had no claim for common-law restitution. *Irirgaray Dairy*, 2015 WL 9319448 at *23-25. The *Irirgaray Dairy* court held that the § 403 claim under *Award Service* "preempted" any common-law restitution claim. *Id.* at *24-25. The court thus dismissed the restitution claim on summary judgment. *Id.* This court thinks that the same basic result must obtain here.

The defendant takes a different view. It first contends that the relevant language from *British Motor Car* is *dicta*. (ECF No. 32 at 2-3.) The court disagrees. The language just quoted was not a "stray remark on an issue not presented to" the appeals court. *See Dodson v. Univ. of Ark. of Med. Scis.*, 601 F.3d 750, 755 (8th Cir. 2010). To the contrary: The *British Motor Car* defendants had argued that they could advance a common-law restitution claim apart from their § 403 claim. *British Motor Car*, 882 F.2d at 377. The Ninth Circuit's reasoning on, and rejection of, this contention was an operative part of its broader decision affirming the dismissal and finding that the employers had advanced no viable refund theory. *See id.* Even if it were technically *dicta*, though, it expresses clearly and forcefully the Ninth Circuit's view on the matter. It would be *dicta* that this court could not ignore.

The defendant's other arguments are unavailing. It points to other circuits that permit common-law restitution claims to recoup overpayments. (ECF No. 32 at 3.) But — as *British Motor Car* expressly reasoned — those circuits do not recognize a statutory refund claim under § 403(c)(2)(A) and have allowed common-law restitution to essentially fill the gap. *See British Motor Car*, 882 F.2d at 377. There is no similar need for common-law restitution in this circuit, where the employer can proceed directly under § 403. *Id.* For this reason, again, both *British Motor Car* and *Irigaray Dairy* held that in this circuit there is no legally cognizable common-law restitution claim for the refund of mistaken contributions. *See id.*; *Irigaray Dairy*, 2015 WL 9319448 at *23-25.

The defendant also cites two post-*British Motor Car* decisions from this circuit — *FMC Med. Plan v. Owens*, 122 F.3d 1258 (9th Cir. 1997) and *Trs. ex rel. Teamsters Benefit Trust v. Doctors Med. Ctr. of Modesto, Inc.*, 286 F. Supp. 2d 1234 (N.D. Cal. 2003) — to support the idea that there can be such a restitution claim. (ECF No. 32 at 3.) The defendant's use of these cases is misguided. The courts in *FMC* and *Doctors Medical* addressed only the question of whether a plan's reimbursement claim was legal or equitable in nature. *FMC*, 122 F.3d at 1259-62 (holding that court lacked subject-matter jurisdiction over essentially legal claim seeking reimbursement under ERISA § 502(a)(3)); *Doctors Medical*, 286 F. Supp. 2d at 1235-40 (same). Neither case supports the proposition that an employer who has a § 403 refund claim can also maintain a separate claim for common-law restitution. In fact, in discussing the different issue before it, *Doctors Medical* made general points that cut against the defendant's position here. The *Doctors Medical* court observed that, "the Ninth Circuit has construed the equitable jurisdiction of the federal courts under ERISA narrowly." *Doctors Medical*, 286 F. Supp. 2d at 1239. "Even under the broader view of equitable restitution to remedy unjust enrichment," *Doctors Medical* continued, "a claim of unjust enrichment lies only where the defendant has no legal claim to the overpayment." *Id.* at 1240. But, again, in this case the defendant does have a legal refund claim. Or, in any case, a statutory refund claim (that already embraces equitable concerns). *See, e.g., Lopshire*, 103 F.3d at 885 (refund claimants under § 403 "must . . . show that the equities favor [statutory] restitution").

### 3. Counterclaim 3 — Document Request and Civil Penalties

**3.1 Preliminary note**

Counterclaim 3 has changed over the course of the parties' Rule 12(b)(6) briefing. As pleaded, Counterclaim 3 seeks civil penalties for the Trust Funds' failure to provide certain documents that Trayer requested; the claim is couched under ERISA § 502(c)(1)(B), 29 U.S.C. § 1132(c)(1)(B). (*See* ECF No. 9 at 10-11.) The parties now seem to agree that this claim is not open to Trayer. Only plan participants or beneficiaries can bring document-refusal claims under § 502(c)(1)(B). Employers cannot. *See* 29 U.S.C. § 1132(c)(1)(B) (discussing remedy available to "a participant or beneficiary"). The facts underlying Counterclaim 3 have also changed: One week after Trayer

ORDER (No. 15-cv-04234-LB)           7

filed its counterclaim, the Trust Funds gave Trayer the requested material. (*See* ECF No. 32 at 7 n. 3.)

This has prompted Trayer to change its request. Trayer now asks that it be awarded attorney's fees and costs for having to file Counterclaim 3; it frames this as "appropriate equitable relief" under ERISA § 502(a)(11), 29 U.S.C. § 1132(a)(11)(B). (ECF No. 32 at 7.)

Insofar as Counterclaim 3 seeks civil penalties under ERISA § 502(c)(1)(B), it is dismissed with prejudice. As for the new request for attorney's fees and costs, strictly speaking, it is not contained in Trayer's counterclaim pleading. But Trayer could almost certainly amend its counterclaim to rectify this problem — and Trayer has asked that it be allowed to make that amendment. (ECF No. 32 at 7 n. 2.) Both because the court construes allegations in the non-movant Trayer's favor, and because the parties have joined the issue, the court addresses the § 502(a)(11) request for "equitable relief."

### 3.2 Discussion

There seems to be no dispute that 29 U.S.C. § 1021(k) obligated the Trust Funds to provide Trayer with the documents that the latter requested. There is thus no dispute that, for as long as they did not give Trayer the requested material, the Trust Funds were out of compliance with § 1021(k). The parties disagree over Trayer's right to recover attorney's fees and costs for filing Counterclaim 3 as "equitable relief" under § 502(a)(11). Their precise dispute is over the nature of the fees and costs: Does a claim for attorney's fees and costs seek equitable relief under 502(a)(11)? Or is it effectively a legal claim for money damages that can't be roped into 502(a)(11)?

Section 502(a)(11) of ERISA in part provides:

> A civil action may be brought . . . in the case of a multiemployer plan, by . . . any employer that has an obligation to contribute to the plan, (A) to enjoin any act or practice which violates . . . [29 U.S.C. § 1021(k) — the document-provision statute that the Trust Funds allegedly violated] . . . , or (B) to obtain appropriate equitable relief . . . to redress such violation . . . .

29 U.S.C. § 1132(a)(11).

ORDER (No. 15-cv-04234-LB) 8

The Trust Funds acknowledge that failing to provide requested documents can give rise to a claim for "appropriate equitable relief" under § 502(a)(11). They deny, however, that the requested fees and costs constitute equitable relief. Rather, in the Trust Funds' view, fees and costs are in the nature of legal damages. They argue that legal damages cannot be awarded under § 502(a)(11) and, to support this position, they point to the Ninth Circuit's decisions in *FMC* and *Doctors Medical* as well as to the Supreme Court's recent decision in *Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*, 136 S.Ct. 651 (2016).

This court agrees. Claims for money damages do not seem to be recognized under ERISA sections that provide for equitable relief. *See FMC*, 122 F.3d at 1260-62; *Doctors Medical*, 286 F. Supp. 2d at 1236-40. If these fees and costs could be recovered under § 502(a)(11), they would have to be in the nature of a claim for equitable restitution. But the fees and costs that Trayer seeks are not in the nature of a restitutionary remedy at all — equitable or legal — because Trayer seeks neither the return of "particular property" to which it can "assert title" (equitable restitution) nor the recovery of "money to pay for some benefit" that it bestowed on the Trust Funds (legal restitution). *See Doctors Medical*, 286 F. Supp. 2d at 1237 (quoting *Great-West Life & Annuity Ins. Co. v. Knudsen*, 534 U.S. 204, 214 (2002)). The fees and costs that Trayer requests are wholly in the nature of a penalty — or, more accurately, damages. "Although . . . [it] dance[s] around the word, what [Trayer] in fact seek[s] is nothing other than compensatory *damages* — monetary relief for . . . losses [it] suffered as a result of the [Trust Funds'] alleged breach of [statutory] duties. Money damages are, of course, the classic form of *legal* relief." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993) (emphases in original). What Counterclaim 3 seeks, in sum, is essentially a legal remedy. And that cannot be had under the "equitable relief" term of ERISA § 502(a)(11).

The Supreme Court's recent decision in *Montanile* confirms this. The Trust Funds' description of *Montanile*, and its application to this case, is entirely correct and the court effectively adopts it. (*See* ECF No. 33 at 9.) *Montanile* dealt with the "equitable relief" term of ERISA § 502(a)(3), rather than the identical term of § 502(a)(11), which is involved in this case, but the court sees no reason that *Montanile's* reasoning should not apply equally here. The *Montanile* Court explained

1  that "equitable relief" under ERISA § 502(a)(3) "is limited to 'those categories of relief that were
2  'typically available in equity'" before the law and equity courts merged in 1938. *Montanile*, 136
3  S.Ct. at 657 (quoting *Mertens*, 508 U.S. at 256) (emphasis removed). "Equitable remedies are, as a
4  general rule, directed against a specific thing" — such as "specifically identified funds" — so that
5  "they give or enforce a right to or over some particular thing . . . rather than a right to recover a
6  sum of money generally out of the defendant's assets." *Montanile*, 136 S.Ct. at 657-59 (quotation
7  omitted) (discussing authorities). A claim for money judgment "against the defendant's general
8  assets . . . [seeks] a *legal* remedy." *Id.* at 658 (emphasis in original). *Montanile* thus held that a
9  plan administrator's claim was not equitable in nature if it was not directed at specific funds still in
10 the defendant's possession. *Id.* at 657-59. Here, too, Trayer is not seeking "particular" and
11 "specifically identified funds"; it asks for relief from the Trust Funds' general assets to
12 recompense its outlays for Counterclaim 3. That is an essentially legal remedy that cannot be
13 folded into the "equitable relief" term of ERISA § 502(a)(11)(B). The Ninth Circuit's decision in
14 *FMC, supra*, suggests, not only that Trayer's request fails to state a claim on which relief can be
15 granted, but also, because it is not cognizable under § 502(a)(11)'s "equitable relief" term, that it is
16 a request over which this court lacks subject-matter jurisdiction. *See FMC*, 122 F.3d at 1235-62.

17   It is possible that Trayer could amend its Counterclaim 3 to state a viable claim for the
18 attorney's fees and costs associated with litigating its document request. The theory supporting
19 such relief would have to look quite different from the one that Trayer has so far advanced; but,
20 given the material before it, the court cannot say that a salvaging amendment is impossible. The
21 court therefore dismisses Counterclaim 3 with leave to amend.

**CONCLUSION**

The Ninth Circuit does not recognize a common-law claim for restitution that mirrors, and is additional to, the statutory claim for a refund of overpaid contributions under ERISA § 403(c)(2)(A). Counterclaim 2 is therefore dismissed with prejudice. Counterclaim 3, as originally pleaded, is also dismissed with prejudice. The request for attorney's fees and costs that now populates Counterclaim 3 seeks an essentially legal remedy that cannot be pursued as "equitable relief" under ERISA § 502(a)(11). Counterclaim 3 is therefore dismissed with leave to amend.

This disposes of ECF No. 18.

**IT IS SO ORDERED.**

Dated: May 3, 2016

LAUREL BEELER
United States Magistrate Judge